```
IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                         CENTRAL DIVISION
```

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| DOUGLAS B. THAYER, as guardian and conservator of HOMER F. OWENS, | ) | Case No. 2:12-cv-00170 |
| Plaintiff, | ) | MEMORANDUM DECISION |
| vs. | ) | |
| EMERALD OWENS, | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

The Defendant in this matter has filed a motion to dismiss, as well as a motion to appoint a guardian ad litem on the grounds that Plaintiff's conflicting interests prevent him from effectively representing the best interests of the conservatee. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part. Defendant's motion to appoint a guardian ad litem is denied.

## Statement of Facts

Prior to July 2009, Homer Owens ("Homer") and Emerald Owens ("Defendant") lived together as husband and wife at their residence in California. Although the facts are incomplete, it appears that Homer has suffered from a form of mental illness or incapacity for some time. (Mem. Opp'n Mot. to Dismiss Ex. A, at 2, Mar. 6, 2012, ECF No. 11-1.) In July 2009, Homer filed a divorce petition in California state court and moved to Provo, Utah, accompanied by his son-in-law Douglas B. Thayer, the Plaintiff in this action. (Pl.'s Am. Compl. 2, Feb. 21, 2012, ECF No. 4.) Pursuant to the terms of a durable power of attorney

Homer executed in July 2009, the Fourth District Court for the State of Utah appointed Plaintiff as Homer's guardian and conservator in September 2009. (Pl.'s Am. Compl. 2.) Defendant thereafter filed a number of motions in that court, including a motion to remove Plaintiff as Homer's guardian, and alleged that Plaintiff had exercised some degree of undue influence over Homer. (Pl.'s Am. Compl. 2.) After a two-day trial, the court found that Homer had independently made lucid and knowing decisions to move to Utah, nominate Plaintiff as his guardian, and file for divorce, findings all of which Defendant appealed. (Notice of Removal Attach. 3, at 17, Feb. 10, 2012, ECF No. 1-3.) Sometime thereafter, Plaintiff (acting as Homer's guardian) dismissed the California divorce petition and filed a new petition in Utah state court. (Pl.'s Am. Compl. 3.)

   The parties agreed to resolve Plaintiff's petition and Defendant's appeal by executing a Final Stipulation on March 14, 2011. (Notice of Removal Attach. 3, at 27.) Among other things, the parties agreed to: (1) withdraw any pending legal claims, (id. at §§ 1, 3); (2) be responsible for their own debts incurred after July 20, 2009, (id. at § 10); and (3) to pay the legal fees of the successful party in any breach of contract claim related to the Final Stipulation, (id. at § 18). Defendant also agreed to: (1) accept a certain amount of money from Homer's various accounts and leave all other property as then divided, (id. at §§ 4-9, 11-12); (2) waive any legal claims she may have had to the contents of those accounts or to other assets (id. at § 12); and (3) waive any right to give input or exercise control over the care of Homer, and to interact with or visit Homer only after providing notice to and at the sole discretion of Plaintiff in his capacity as Homer's guardian, (id. at § 12, 16).

However, shortly after executing the Final Stipulation, Defendant filed a claim against Plaintiff (individually), Plaintiff's wife (Homer's daughter), and Homer's other children in the San Diego Superior Court on July 19, 2011. (Pl.'s Am. Compl. 3). Although Defendant made a number of claims, relevant to this case is Defendant's allegation that Plaintiff exercised undue influence over Homer and that she is therefore entitled to funds contained in several of the accounts dealt with in the Final Stipulation. (Notice of Removal Attach. 3, at 44-45.) On January 20, 2012, Plaintiff (as guardian) in response filed a complaint in the Fourth District Court. Defendant removed the case to federal court on February 10, 2012.

Plaintiff petitions this Court for (1) damages for alleged breach of contract from both attempting to re-divide property contrary to the Final Stipulation and from refusing to pay debts incurred after July 20, 2009; (2) damages for alleged breach of implied covenant of good faith and fair dealing; (3) declaratory relief in the form of an order that sets forth the parties' respective rights and waivers under the Final Stipulation; and (4) injunctive relief in the form of an order enjoining Emerald from pursuing litigation in state court. (Pl.'s Am. Compl. 5-8.) Although Defendant has filed a variety of motions and counterclaims, relevant to this Court at present are (1) a motion to dismiss, on the grounds that Plaintiff's claims are barred as compulsory counterclaims under F.R.C.P. 13(a)(1)(A) and that this court cannot enjoin the pending state lawsuit under the federal Anti-Injunction Act or, in the alternative, petitioning the Court to grant a stay of proceedings, (Mot. to Dismiss 2-3, Feb. 28, 2012, ECF No. 6); and (2) a motion to appoint a guardian ad litem for Homer due to an alleged conflict of interest on part of Plaintiff, (Def's Mot. to Appoint Guardian ad Litem, Mar. 3, 2012, ECF No. 14).

Motion to Dismiss

*1. Compulsory Counterclaims—F.R.C.P. 13*

Defendant first seeks to dismiss Plaintiff's claims as compulsory to her California lawsuit under Federal Rule of Civil Procedure 13. Rule 13 provides that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." F.R.C.P. 13(a)(1)(A).

Rule 13 first requires that a party be "opposing." There is no "definitive answer to the question of who is an opposing party for purposes of a counterclaim," 6 Charles Alan Wright et al., Federal Practice and Procedure § 1404 (3d ed. 1998), and neither this Court nor the Tenth Circuit has precisely addressed the question of when a party sued in her individual capacity must under Rule 13 bring a counterclaim in another capacity. However, to determine whether a party is "opposing," courts have taken both a "plain meaning" approach, relying merely on whether an individual is actually named as a party to the suit, and a more liberal approach, analyzing the overlap between the character of the parties to determine whether the entity in question is a "real party in interest." Compare, e.g., Ponderosa Dev. Corp. v. Bjordahl, 787 F.2d 533, 536 (10th Cir. 1986) (plain meaning) with Avemco Ins. Co. v. Cessna Aircraft Co., 11 F.3d 998, 1000 (10th Cir. 1993) (real party in interest).[1] The "real party in

---

[1] Although the plain meaning approach seems to be the general rule, Wright et al., supra, § 1404, recent case law appears to be moving toward the more liberal, "real party in interest" approach. See, e.g., Banco Nacional de Cuba v. First Nat'l City Bank of N.Y., 478 F.2d 191 (2d Cir. 1973); Scott v. United States, 354 F.2d 292 (Fed. Cl. 1965). Chambers v. Cooney, 537 F. Supp. 2d 1248 (S.D. Ala. 2008). The Tenth Circuit appears to be following that trend. See Avemco Ins. Co. v. Cessna Aircraft Co., 11 F.3d 998 (10th Cir. 1993); Liberty Nat. Bank & Trust Co. of Okla. City v. Acme Tool Division of Rucker Co., 540 F.2d 1375 (10th Cir. 1976) (abrogating an earlier line of cases in which interpleaders' failure to assert counterclaims barred further action under Rule 13).

4

interest" approach is more aligned with the purposes of Rule 13, in that it allows individuals "to resolve all their pending disputes within the bounds of the one litigation," and allows judges to balance the concerns of equity and judicial economy to avoid a potentially "technical" or "artificial" method of drumming up excess litigation. See Scott, 354 F.2d at 300.

Under the plain meaning approach, a court simply looks at whether an individual was actually a named party in a prior lawsuit. See Ponderosa, 787 F.2d at 536. In Ponderosa, the court held that the compulsory counterclaim doctrine did not bar claims against a corporation because the parties were not named in the original suit, and therefore not "opposing." Id. Conversely, under the "real party in interest" approach, the definition of "opposing party" may "encompass entities that are 'one and the same for the purposes of th[e] litigation.'" Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 701 F. Supp. 2d 568, 590 (S.D.N.Y. 2010) (quoting Banco Nacional de Cuba, 478 F.2d at 193). A party is a "real party in interest" if the party acts "as one" with the party that appeared in a previous action. Id. at 590. Thus, in Mosdos, Rule 13 did not bar a religious group from asserting discrimination claims against village officials in their individual capacities, as they were not "one and the same" with the village named in prior litigation. Id. at 592-93. However, in Avemco, the court found that because an insurance company was essentially the same party as and had "no greater rights" than the insured, the company was a real party in interest and therefore barred from bringing claims under Rule 13. 11 F.3d at 1000.

The second requirement of Rule 13 is that, in order for a counterclaim to be compulsory, it must "arise[] out of the transaction or occurrence that that is the subject matter of the

opposing party's claim." F.R.C.P. 13(a)(1)(A). Although courts have devised a number of tests, this Circuit has held that a claim arises out of the same transaction or occurrence if there is a "logical relationship" between the original claim and the counterclaim. Pipeliners Local Union No. 798 v. Ellerd, 503 F.2d 1193, 1198 (10th Cir. 1974) (adopting the logical relationship test as "most controlling"); United States v. Questar Gas Mgmt. Co., No. 2:08CV167(DAK), 2010 WL 2813779, at *3 (D. Utah July 16, 2010). The inquiry turns largely "[o]n the totality of the facts presented," and in deciding whether a claim arises out of the same transaction or occurrence, the phrase is "accorded a liberal construction" in the interest of furthering judicial efficiency and economy. Pipeliners, 503 F.2d at 1189-99. Applying this broad construction, this Court in Questar nevertheless found a counterclaim brought by a gas company for breach of contract to be "factually and legally unrelated" to a nuisance claim for air pollution brought by an Indian tribe and therefore not compulsory. 2010 WL 2813779, at *3.

    Rule 13 does not bar Plaintiff's claims as compulsory to the California lawsuit. First, it is not clear that Plaintiff's breach of contract and breach of good faith and fair dealing claims are logically related to and therefore arise out of the same transaction or occurrence as Defendant's California lawsuit. Although Defendant's lawsuit speaks to a small degree about undue influence in executing the Final Stipulation, the majority of Defendant's state claims (e.g., elder abuse, undue influence, intentional infliction of emotional distress, and others), are separate from any claims that arise out of the Final Stipulation. Notably, Defendant does not rely on the Final Stipulation as the basis of any of her claims. Thus, as in *Questar Gas*, the link between the Defendant's state claims and Plaintiff's claims in this lawsuit seems too attenuated to hold that they share a

logical relationship sufficient to invoke a Rule 13 compulsory counterclaim bar.

However, even if Plaintiff's claims do share a logical relationship and are therefore transactionally related, Plaintiff was not an opposing party for purposes of the California litigation. Plaintiff in his capacity as guardian was clearly not a named defendant in that suit. But even under a less exacting analysis, Plaintiff cannot be viewed an opposing party under Rule 13 because Plaintiff in his individual capacity and Plaintiff in his guardianship capacity are not "one and the same" for purposes of litigation. Unlike the insurance company in <u>Avemco</u>, Plaintiff's rights as an individual under the Final Stipulation—the main point of contention for purposes of this lawsuit—do not mirror Homer's. Homer has a wholly different set of rights than the Plaintiff individually, as evidenced by the fact that only Homer and Defendant were parties to the Final Stipulation. Furthermore, Defendant's claims that Plaintiff and Homer's children are "third-party beneficiaries" under the Final Stipulation or otherwise stand to benefit thereby are insufficient to show that they are real parties in interest; an unsupported assertion that one *might* benefit in the future does not necessarily imply a present interest sufficient to bar a claim. Finally, the fact that the nature of Plaintiff's rights as an individual and Homer's rights as asserted by his guardian are so different implies that equity interests are at stake, and trump the interests of judicial economy in this situation.

*2. Anti-Injunction Act—28 U.S.C. § 2283*

Defendant also seeks to dismiss a portion of Plaintiff's claim on the grounds that the Federal Anti-Injunction Act[2] forbids this Court from enjoining proceedings in state court. The Act absolutely prohibits federal courts form enjoining state proceedings except when: (1) expressly authorized by an act of Congress; (2) it is necessary to aid the federal court's jurisdiction; or (3) it is necessary to protect or effectuate the federal court's judgment. 28 U.S.C. § 2283 (2006). The Tenth Circuit recently dealt with the third exception (the "relitigation exception"), and as a matter of first impression decided that the exception should be applied very narrowly to authorize injunctions of state court proceedings only when issues "actually have been decided by the federal court." Weyerhaeuser Co. v. Wyatt, 505 F.3d 1104, 1109-10 (10th Cir. 2007) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 148 (1988)) (noting also that the "vast majority of circuits" have similarly interpreted the relitigation exception). Furthermore, if issues of a state case are only tangentially or indirectly related to the issues presented in the federal case, an injunction is unwarranted. State ex rel. Wilson v. Blankenship, 447 F.2d 687, 693 (10th Cir. 1971). Lastly, "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." Smith v. Bayer Corp., 131 S. Ct. 2368, 2375 (2011) (citation omitted).

---

[2] The Act reads: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (2006). The only portion of the statute invoked by Plaintiff in this case is the third exception, under which a federal court may enjoin state proceedings "to protect or effectuate its judgments." Id.

8

Defendant's claim that the Anti-Injunction Act prohibits this Court from enjoining her California lawsuit is accurate. Neither of the Act's first two exceptions applies, nor does Plaintiff claim that they do. Furthermore, a properly narrow application of the relitigation exception demonstrates that it does not apply, either. To date, this Court has not in this case decided anything, either fully or partially, thus prohibiting application of the exception. Though an injunction may serve to aid the Court in effectuating its judgments if it decides to grant Plaintiff's petition for declaratory relief, it declines to grant an injunction for a merely prospective judgment.

*3. Petition for Stay of Proceedings*

Other than a brief statement that a stay of proceedings would promote judicial economy, Defendant has provided no legal basis or argument as to why the Court should grant her petition. Without such a basis, the Court will not address the matter.


Motion to Appoint Guardian ad Litem

Finally, Defendant moves the Court to select and appoint an independent guardian ad litem on the grounds that Plaintiff has a conflict of interest that renders him unfit to represent Homer's interests. Federal Rule of Civil Procedure 17 permits a court, in its discretion, to appoint a guardian ad litem when it will be in the best interests of an incapacitated person. See F.R.C.P. 17(c); T H v. Jones, 425 F. Supp. 873, 876 (D. Utah 1975) ("Neither the appointment of a guardian ad litem nor a protective order in lieu of such appointment is mandatory so long as we determine that the plaintiff is adequately protected . . . ."). When preference for a guardian is stated in a durable power of attorney, the court should override that preference only for

cause, such as when there is an actual conflict of interest between the guardian and the incapacitated individual. See In re Penning, 930 A.2d 144, 151-52 (D.C. Ct. App. 2007); In re Tamara L.P., 503 N.W.2d 333 (Wis. Ct. App. 1993). Thus, the court in In re Tamara L.P. applied a "substantial relationship" test to find that an attorney who had represented a party adverse to an incapacitated individual could not effectively represent the interests of that individual in a subsequent action. 503 N.W.2d at 338-39. Finally, when a guardian is previously named in a state court proceeding, the state court's decision substantially informs, but does not control, the federal court's decision to appoint a guardian ad litem. See Slade v. La. Power & Light Co., 418 F.2d 125, 127 (5th Cir. 1979).

The Court denies Defendant's motion to appoint a guardian ad litem to represent Homer's interests, as Defendant has demonstrated neither an actual conflict between Plaintiff and Homer's interests nor how Plaintiff's actions preclude him from acting in Homer's best interest. First, although Defendant has produced no analysis of the case law she sets forth, a cursory application of the law demonstrates that there is no actual conflict of interest such that Plaintiff cannot effectively represent Homer. Defendant asserts that because Plaintiff has on multiple occasions prohibited her from visiting Homer, Plaintiff is not acting in Homer's best interest. Beside the fact that denial of visitation alone does not constitute evidence of adversely situated interests, Defendant actually agreed in the Final Stipulation that she would "on occasion be allowed visits with Homer, *at the sole discretion of Homer's Guardian/Conservator*," and that visitation may immediately cease "if [the Guardian/Conservator] believes the visit is not in Homer's best interest." (Notice of Removal Attach. 3, at 29, § 16) (emphasis added). By denying visitation, Plaintiff is fully

within the terms of the Final Stipulation to which Defendant agreed. Denial of visitation thus does not prove an actual conflict of interest sufficient to justify appointing a guardian ad litem. Defendant also argues that Plaintiff's representing Homer's children in the California lawsuit implies a conflict of interest. This is simply not the case. For there to be a conflict of interest between an attorney in another action who is then appointed guardian, the conflict must be with the incapacitated person. Defendant has shown no evidence demonstrating how Plaintiff's representation of others is adverse *to Homer*, or how Plaintiff cannot act independently thereby. Also informative is the fact that Homer in his durable power of attorney expressed a desire for Plaintiff to serve as his guardian and conservator, and that the Utah state court—after a two-day trial—found the power of attorney to be valid and that Plaintiff was fully capable of acting independently and in Homer's best interests. Given the totality of the facts presented, the Court denies Defendant's motion to appoint a guardian ad litem.

## Conclusion

Based on the foregoing analysis, the Court (1) denies in part Defendant's motion to dismiss Plaintiff's breach of contract and breach of good faith and fair dealing claims as compulsory counterclaims under Rule 13, since Plaintiff in his guardianship capacity was not a "real party in interest" to the California litigation; (2) grants Defendant's motion in part by dismissing Plaintiff's request for injunctive relief, since a properly narrow application of the Anti-Injunction Act precludes this Court from enjoining the California state court proceedings; and (3) denies Defendant's request for stay of proceedings, as she has provided no legal basis upon which the Court can grant her request. The Court further denies Defendant's motion to appoint a

guardian ad litem to represent Homer's interests, as she has not provided evidence sufficient to demonstrate that an actual conflict of interest exists that would preclude Plaintiff from acting in Homer's best interest.

IT IS SO ORDERED.

    DATED this 24th day of May, 2012.

                                    BY THE COURT:

                                    *David Sam*
                                    DAVID SAM
                                    SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT